UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

SIMDAG/ROBEL, LLC,

      Debtor.

_____/

SIMDAG/ROBEL, LLC,

      Plaintiff,

v.                                      Case No. 8:09-cv-146-T-23EAJ

PROVIDENCE FUNDING, INC., et al.,

      Defendants.

_____/

# O R D E R

    The plaintiff sues (Doc. 2) Providence Funding, Inc., ("Providence") and Byron

Levon Canada ("Canada") for fraud, racketeering, conversion, breach of contract, civil

theft, deceptive trade practices, and misleading advertising. The defendants move (Doc.

8) to dismiss the complaint or for a more definite statement, and the plaintiff responds

(Doc. 11) in opposition.

## Standard of Review

    During resolution of a motion to dismiss, allegations in the complaint are accepted

as true and construed favorably to the opposing party.   Beck v. Deloitte & Touche, 144

F.3d 732 (11th Cir. 1998).  Under the notice pleading standard of the Federal Rules of

Civil Procedure, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). However, neither a conclusory allegation nor "a legal conclusion couched as a factual allegation" supports the sufficiency of a complaint. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also South Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996).

Because several of the plaintiff's claims assert fraud, these claims must satisfy Rule 9(b), Federal Rules of Civil Procedure, which requires a party alleging fraud to "state with particularity the circumstances constituting fraud." To satisfy Rule 9(b)'s particularity requirement, a plaintiff must set forth "(1) precisely what documents or oral representations were made, . . . (2) the time and place of each such statement and [where possible] the person responsible for making (or, in the case of omissions, not making) same, . . . (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." In re Recoton Corp. Sec. Litig., 358 F. Supp. 2d 1130, 1138 (M.D. Fla. 2005) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).


Factual Background

In March, 2008, the plaintiff sought financing to develop a condominium building in downtown Tampa. (Doc. 2, ¶ 5) After negotiations with Canada and Providence, the plaintiff and Providence executed a "commitment letter," pursuant to which Providence agreed to lend the plaintiff sixty-five percent of the "'as-is value' [of the property] and in

an amount not to exceed two hundred million dollars." (Doc. 2-2 at 2) Pursuant to the commitment letter, the plaintiff paid Providence a non-refundable "commitment fee" of $150,000.00. (Docs. 2, 2-2) The plaintiff "waited two days at the offices of a closing agent, but Providence and Canada failed and refused to fund the first phase of the loan." (Doc. 2, ¶ 49) "After the execution of the commitment letter and the payment of the commitment fee, Providence made it clear that it had no intention to close on the loan." (Doc. 2, ¶ 50)

According to the complaint, Canada "has been convicted of at least twenty-eight felonies, all of which involved dishonesty or false statement." (Doc. 2, ¶ 9) Canada founded Providence and serves as the company's chairman and president. (Doc. 2, ¶ 8) On its website, Providence claims to be a "faith-based" organization (Doc. 2, ¶ 27) and displays a photograph of Canada "clothed in clerical garb." (Doc. 2, ¶ 28) Tellingly, the complaint provides more detail about Canada's criminal history than about the defendants' purported fraud in this case.


Discussion

The complaint comprises twelve counts: "Fraudulent Transfers under [Bankruptcy Code] § 544" (Counts I and II); "Racketeer Influenced and Corrupt Organizations Act as against Providence and Canada" (Count III); conversion (Counts IV and V); fraud (Counts VI and VII); breach of contract against Providence (Count VIII); civil theft (Counts IX and X); unfair and deceptive trade practices against Providence (Count XI); and "Fraud by Misleading Advertising" against Providence (Count XII).

The Fraud and RICO Claims

- 3 -

Pursuant to Rule 9(b), Federal Rules of Civil Procedure, Counts I, II, III,[1] VI, and

VII are **DISMISSED**.  The plaintiff may not achieve the particularity required by

Rule 9(b) by incorporation of the vague and conclusory allegations that appear earlier in

the complaint.


### The Conversion Claims

"Under Florida law, a conversion is 'an unauthorized act which deprives another

of his property permanently or for an indefinite time.'" Fogade v. ENB Revocable Trust,

263 F.3d 1274, 1291 (11th Cir. 2001) (quoting Senfeld v. Bank of Nova Scotia Trust Co.

(Cayman) Ltd., 450 So. 2d 1157, 1160-61 (Fla. 3d DCA 1984)).  However, "[a] mere

obligation to pay money may not be enforced by an action for conversion." Capital Bank

v. G&J Invs. Corp., 468 So.2d 534, 535 (Fla. 3d DCA 1985).  "To be a proper subject of

conversion each coin or bill need not be earmarked, but there must be an obligation to

keep intact or deliver the specific money in question, so that such money can be

identified." Belford Trucking Co., Inc. v. Zagar, 243 So.2d 646, 648 (Fla. 4th DCA 1970)

("The requirement that the money be identified as a specific chattel does not permit as a

subject of conversion an indebtedness which may be discharged by the payment of

money generally.")

In Counts IV and V, the plaintiff purports to state a claim for conversion against

Providence and Canada.  In the conclusory style that pervades the complaint, the

---

[1] Rule 9(b) applies to a civil claim for violation of the Racketeer-Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, if the claim is predicated on fraud.  Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007).

plaintiff alleges that the defendants, "together with others, intentionally, willfully and maliciously appropriated and converted monies and property of the [plaintiff] to [the defendants'] own use and gain." (Doc. 2, ¶¶ 77, 83) The plaintiff further alleges entitlement to "recover all such misappropriate [sic] monies and property from Providence in amounts to be proved at trial but expected to be no less than $150,000." (Doc. 2, ¶¶ 78, 84) Construed favorably to the plaintiff, the complaint seeks a refund of the commitment fee (the only "misappropriated" money or property identified in the complaint).

The commitment letter, incorporated into the complaint as Exhibit A, states that the commitment fee "is not refundable under any circumstances, except as agreed herein." (Doc. 2-2 at 6) Although Providence agreed to refund the commitment fee if "Providence is unable to perform its obligations under the terms of this commitment letter" (Doc. 2-2 at 7), no provision of the commitment letter compels Providence to isolate the commitment fee as a separate fund. To the extent Providence owes a duty to refund the commitment fee, Providence may discharge this duty "by the payment of money generally." Belford Trucking Co., Inc. v. Zagar, 243 So.2d at 648. Accordingly, Counts IV and V fail to state a claim for conversion, and Counts IV and V are **DISMISSED WITH PREJUDICE**.

## The Civil Theft Claims

Section 772.11, Florida Statutes, allows a victim of criminal theft to sue for recovery of three times the value of the property stolen. To state a claim for civil theft, the plaintiff must allege that the defendants knowingly obtained or used the plaintiff's property with the intent to temporarily or permanently deprive the plaintiff of a right to or the benefit from the property. Construed favorably to the plaintiff, Counts IX and X allege that the defendants knowingly obtained the $150,000.00 commitment fee with the intent to permanently deprive the plaintiff of the use of the fund.

The defendants argue that the "economic loss rule" bars the civil theft claims because the alleged theft resulted in no loss distinct from any loss arising from a breach of commitment letter. See Colonial Penn Ins. Co. v. Value Rent-A-Car, Inc., 814 F. Supp. 1084, 1098 (S.D. Fla. 1992). This argument lacks merit. Despite the existence of a contract, a claim for civil theft is available if "the existence of a contract [is] only incidental to the alleged felonious schemes. Gordon v. Omni Equities, Inc., 605 So.2d 538, 541 (Fla. 1st DCA 1992). The plaintiff alleges that the defendants induced the plaintiff to sign the commitment letter "with felonious intent" to deprive the plaintiff of the commitment fee. The defendants also argue for dismissal because the plaintiff failed to comply with the written demand requirement of Section 772.11. For the reasons stated in the plaintiff's response to the motion to dismiss (Doc. 11 at 15), this argument also lacks merit. Accordingly, the motion to dismiss is **DENIED** with respect to Counts IX and X.

<u>The Deceptive Trade Practices and Misleading Advertising Claims</u>

Count XI of the complaint purports to state a claim for a violation of Florida's Deceptive and Unfair Trade Practices Act, Section 501.201, <u>et seq.</u>, Florida Statutes. The plaintiff alleges that "Providence engaged in unconscionable, unfair or deceptive acts or practices . . . by emphasizing its claim that it was a faith-based organization and relying on this status as establishing its integrity and by its depiction of its Chairman, Canada, identified as 'The Very Rev. Fr. Barney' in clerical garb." (Doc. 2, ¶ 126) However, the plaintiff alleges no fact showing that the representations of religious affiliation on Providence's website are false or misleading. Accordingly, Count XI is **DISMISSED**.

Count XII purports to state of claim for violation of Section 817.41(1), Florida Statutes, which statute proscribes misleading advertising. To state a claim for misleading advertising under Florida law, the plaintiff must allege reliance "on some identifiable alleged misleading advertising plus, where appropriate, all of the other elements of the common law tort of fraud in the inducement." <u>Third Party Verification, Inc. v. Signaturelink, Inc.</u>, 492 F. Supp. 2d 1314, 1322 (M.D. Fla. 2007). The plaintiff alleges that "Providence's promotional materials misrepresented and concealed material facts regarding its Chairman, Canada." (Doc. 2, ¶ 139) The conclusory allegations in Count XII fail to meet Rule 9(b)'s standard for pleading fraud with particularity, and Count XII is **DISMISSED**.

<u>Conclusion</u>

The defendants' motion (Doc. 8) to dismiss or for a more definite statement is **GRANTED IN PART** and **DENIED IN PART**. The motion (Doc. 8) is **GRANTED** to the extent that Counts IV and V of the complaint (Doc. 2) are **DISMISSED WITH PREJUDICE** and Counts I, II, III, VI, VII, XI, and XII are **DISMISSED** with leave to amend. The motion is otherwise **DENIED**. On or before **April 27, 2009**, the plaintiff shall file an amended complaint that complies with pleading standard prescribed by the Federal Rules of Civil Procedure.

ORDERED in Tampa, Florida, on April 10, 2009.

_____
**STEVEN D. MERRYDAY**
**UNITED STATES DISTRICT JUDGE**